In re PAPPAS & ROSE, P.C., Petitioner.

No. CIV–98–1355–A.

United States District Court,
W.D. Oklahoma.

Dec. 1, 1998.

Michael J. Rose, Pappas & Rose PC, Oklahoma City, OK, for Pappas & Rose, PC, for Pappas & Rose, P.C.

Bart A. Boren, Williams Luttrell & Boren, Oklahoma City, OK, for Tinker Federal Credit Union.

D. Kent Meyers, Keri C. Prince, Crowe & Dunlevy, Oklahoma City, OK, for Conference on Consumer Finance Law.

Bart A. Boren, Williams Luttrell & Boren, Oklahoma City, OK, for Tinker Federal Credit Union.

## ORDER

ALLEY, District Judge.

Before the Court are petitioner's Petition for Writ of Prohibition and for Writ of Mandamus, petitioner's Application for Expedited Hearing, an Amicus Curiae Brief of the Conference on Consumer Finance Law ("CCFL"), Judge TeSelle's Response to the Petition, and petitioner's Reply to the Amicus Curiae Brief.

### Background

Judge John TeSelle, United States Bankruptcy Judge for the Western District of Oklahoma, implemented Chapter 13 Guidelines (the "Guidelines") on September 28, 1998. Petitioner challenges one provision of the Guidelines regarding payment of debtors' attorneys' fees. The challenged guideline provides that attorneys' fees will be paid in equal installments over not less than 24 months, unless the plan proposes to pay unsecured creditors 20% or more. Then attorneys' fees may be paid over a ten-month period. This Guideline applies to all cases on the court's September 1999 confirmation docket. The Guidelines also provide for a phase-in of the 24–month provision.

Judge TeSelle implemented the Guideline in response to statistics compiled by the Assistant United States Trustee for the Western District of Oklahoma that reflect an increased distribution to attorneys in Chapter 13 plans and a decreased distribution to unsecured creditors. *See* Chapter 13 Trustee's Annual Report. Further, statistics reflect that more than 70% of all plans filed in the Western District of Oklahoma failed last year. *Id.*

### Jurisdiction

Petitioner argues that the Court has jurisdiction to issue mandamus relief under the All Writs Statute, 28 U.S.C. § 1651, in aid of jurisdiction. Further, petitioner claims that the Tenth Circuit Court of Appeals in *In re Kaiser Steel Corp.,* 911 F.2d 380 (10th Cir. 1990) recognizes a court's ability to issue writs of mandamus.

■ Pursuant to Fed.R.Civ.P. 81(b), the writ of mandamus has been abolished from district court practice. However, where the Court otherwise has jurisdiction, mandamus relief in aid of it is available. *See* 12 Wright, Miller & Marcus, *Federal Practice and Procedure:* Civil 2nd § 3134 (1997). In *Kaiser,* 911 F.2d at 385, the Tenth Circuit Court of Appeals held that 28 U.S.C. § 158(a) authorizes interlocutory appeals from bankruptcy court orders and decrees to the district court with leave of court. *Id.* at 385. The appellate court further found that the broad scope of an interlocutory appeal "necessarily decreases the availability of the extraordinary writ [of mandamus]. Consequently, mandamus is completely unavailable in most bankruptcy situations." *Id.* at 386. Moreover, "[e]ven if a district court could grant a writ of mandamus under the original jurisdiction in bankruptcy, we hold that such a course is merged into the statutory power to withdraw the reference." *Id.* at 387.

■ Accordingly, *Kaiser* does not support petitioner's argument that this Court has independent jurisdiction to issue a writ of mandamus. Rather, this Court's authority to issue a writ of mandamus in a bankruptcy action is apparently tied to its ability to withdraw the reference. Petitioner clearly states he is not seeking to have the reference of Chapter 13 cases withdrawn. However, this is the mechanism through which this Court may issue a writ of mandamus to

bankruptcy judges. The Court declines to withdraw the reference.

██ Even assuming the Court could issue a writ of mandamus without withdrawing the reference, its authority to issue a writ of mandamus must be associated with independent jurisdiction. *See* 12 Wright, Miller & Marcus, *Federal Practice and Procedure: Civil 2d* § 3134 (1997). Petitioner cites to the All Writs Statute indicating that mandamus may be issued in aid of the Court's jurisdiction. Even so, the Court must first have jurisdiction over the bankruptcy matter. "[T]he power to issue a writ of mandamus flows from the court's exercise of its revisory appellate power over the inferior court." *Kaiser*, 911 F.2d at 386 (citations and quotations omitted).

Pursuant to 28 U.S.C. § 158(a), district courts have jurisdiction to hear appeals:

(1) from final judgments, orders and decrees;

(2) from interlocutory orders and decrees issued under Section 1121(d) of title 11 increasing or reducing the time periods referred to in Section 1121 of such title; and

(3) with leave of the court, from other interlocutory orders and decrees.

Chapter 13 cases are cases referred to the bankruptcy judges under § 157. 28 U.S.C. § 157.

██ Petitioner has not filed an appeal in this case and asserts that filing an appeal would be a conflict of interest with the debtors and would be too time-consuming. However, petitioner does not indicate why he did not seek an interlocutory appeal from Judge TeSelle's ruling by requesting leave of court. Petitioner's claim is most analogous to claims appealable by interlocutory appeal. *See e.g. In re Four Seas Center, Ltd.*, 754 F.2d 1416 (9th Cir.1985); 1 *Collier on Bankruptcy*, ¶ 5.07(5) (15th ed. rev.1998). Although the Court may have independent jurisdiction over this matter, petitioner has failed to seek leave of court prior to filing an interlocutory appeal. In essence, petitioner has not invoked this Court's appellate jurisdiction over the bankruptcy court, and thus asks the Court to make a collateral review of Judge TeSelle's Guidelines. "A district court lacks authority to issue a writ of mandamus to another district court." *Mullis v. U.S. Bankruptcy Court for District of Nevada*, 828 F.2d 1385, 1393 (9th Cir.1987), *cert. denied*, 486 U.S. 1040, 108 S.Ct. 2031, 100 L.Ed.2d 616 (1988). "To allow a district court to grant injunctive relief against a bankruptcy court or the district court in the underlying bankruptcy case would be to permit, in effect, a 'horizontal appeal' from one district court to another ..." *Id.* at 1392–93. "Such collateral attacks on the judgments, orders, decrees or decisions of federal courts are improper." *Id.* at 1393. In this regard, the Court declines to collaterally review Judge TeSelle's Guideline.

However, even assuming the Court could lawfully issue a writ of mandamus in this case, the writ is not warranted as discussed below.

### Mandamus Relief

██ "Mandamus 'is a drastic [remedy], to be invoked only in extraordinary situations,' and will issue only in those exceptional cases where the inferior court has acted wholly without jurisdiction or so clearly abused its discretion as to constitute a judicial usurpation of power." *Kaiser*, 911 F.2d at 387 (citing *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980)). To obtain a writ of mandamus, the petitioner must have no other adequate means to obtain the relief he desires. *Allied*, 449 U.S. at 35–36, 101 S.Ct. 188. Additionally, petitioner must demonstrate that his right to the writ is "clear and indisputable." *Id.* (citations and quotations omitted).

██ The Tenth Circuit Court of Appeals has adopted guidelines to assist in determining whether to grant the writ, including: (1) whether there is another adequate means to secure relief; (2) whether petitioner will be damaged or prejudiced in a way not correctable on appeal; (3) whether the district court's order constitutes an abuse of discretion; (4) whether the district court's order represents an often repeated error and manifests a persistent disregard of federal rules; and (5) whether the district court's order

raises new and important problems or issues of law of first impression. *Kaiser*, 911 F.2d at 387.

For purposes of this Order only, the Court assumes *arguendo* that petitioner has met factors one, two and five above.[1] The Court finds that petitioner is unable to meet factors three and four, however.

■■■■■ Bankruptcy judges through referral by the district court may establish local rules and guidelines to regulate bankruptcy proceedings in any manner consistent with, and not duplicative of Acts of Congress, the Rules or Official Forms. 28 U.S.C. § 2075; Bankruptcy Rule 9029; Fed.R.Civ.P. 83. An individual judge may regulate the practice in his courtroom in any manner consistent with federal law. Fed.R.Bankr.P. 9029(b); 11 U.S.C. § 105(a). Petitioner claims that Judge TeSelle's ruling is a procedure that he may issue only if there is no controlling law and only if it does not abridge substantive rights. Petitioner further argues that the bankruptcy code provides for the payment of administrative expenses and Judge TeSelle's Guideline abridges substantive rights by altering the timing of payment of attorneys' fees.

■■■■■ Simultaneously with filing a petition for Chapter 13 Bankruptcy or within a specified time thereafter, a debtor must file a plan setting forth a payment schedule to secured and unsecured creditors. 11 U.S.C. § 1321. Further, the plan must provide for the payment of administrative expenses, including attorneys' fees. 11 U.S.C. § 503(b)(4). These administrative expenses must be paid in-full and are categorized as priority claims. 11 U.S.C. §§ 507, 1322(a)(2). These claims must be paid either before or with each distribution to creditors under the plan. 11 U.S.C. § 1326(b)(1). *In re Shorb*, 101 B.R. 185 (9th Cir. BAP 1989); *In re Barbee*, 82 B.R. 470 (Bankr.N.D.Ill.1988); *In re Lanigan*, 101 B.R. 530 (Bankr.N.D.Ill. 1986); *In re Parker*, 21 B.R. 692 (E.D.Tenn. 1982).

Petitioner argues that Judge TeSelle's payment procedure, *i.e.* that attorneys' fees be paid in installments over a ten to 24–month period, violates statutory law that states the debtor files the plan and the court must confirm any plan that complies with the statute. Further, petitioner contends that this payment procedure impermissibly alters priority payments under 11 U.S.C. § 507.

■■■■ The Court agrees with petitioner that the debtor files the plan and that the court must confirm any plan that complies with certain statutory requirements. 11 U.S.C. § 1325(a). However, the bankruptcy court has the authority to determine the amount of attorneys' fees and need not accept the debtor's plan on its face. 11 U.S.C. § 330(a)(2). Rather, pursuant to 11 U.S.C. § 330 after notice and an opportunity for a hearing, the court may award reasonable compensation for actual and necessary services rendered by attorneys. Necessary services are those that service and benefit the debtor's estate. *In re Zwern*, 181 B.R. 80, 84 (Bankr.D.Colo.1995). Services that benefit the estate are those that facilitate the successful completion of the plan. 3 *Collier on Bankruptcy*, § 330 at ¶ 330.04(2) (15th ed. rev.1998). Failure of a Chapter 13 plan is not reasonably likely to benefit the estate. Bankruptcy statistics have demonstrated that 70% of the plans filed have failed because of the debtor's inability to meet plan payments. This failure has led to the anomaly that attorneys' fees are recovered in lieu of any creditors' receiving payment. Accordingly, the timing of attorneys' fee payments is directly linked to the successful administration of the plan. As such, Judge TeSelle's Guideline is not a violation of his discretionary power over attorneys' fees.

■■■■ The statutory language that administrative claims be paid "before or at the time of each payment to creditors under the plan" is not violated by this monthly payment as attorneys receive their fees each time a creditor is paid. *See e.g. In re Palombo*, 144 B.R. 516, 518 (Bankr.D.Colo.1992) (holding payments of administrative expenses may be drawn over the life of the plan in Chapter 12 cases citing Chapter 13 case law in support);

---

1. CCFL contends that petitioner has an alternate remedy through appeal. Judge TeSelle's response implies that an appeal would not be an adequate remedy for petitioner.

*In re Shorb,* 101 B.R. 185 (9th Cir. BAP 1989) (holding payment of attorneys' fees may be spread over the life of the plan); *In re Barbee,* 82 B.R. 470, 473 (Bankr.N.D.Ill. 1988) (holding pursuant to 11 U.S.C. § 1326(b) spreading fees over part or all of the life of the plan is appropriate); *In re Lanigan,* 101 B.R. 530 (Bankr.N.D.Ill.1986) (same); *In re Parker,* 21 B.R. 692 (E.D.Tenn.1982) (same). Requiring compliance with the Guideline prior to confirming the plan does not violate statutory law as prior payment of attorneys' fees is not statutorily required. Rather, priority payments, including attorneys' fees under 11 U.S.C. § 507(a)(1) are limited by 11 U.S.C. § 1326. Pursuant to 11 U.S.C. § 1326(b)(1), these payments may be made concurrently with payments to creditors. Although the debtor presents the plan, the amount and timing of attorneys' fees is not completely within the debtor's control or authority. 11 U.S.C. § 330(a)(2). As discussed above, a bankruptcy court has some discretion in awarding attorneys' fees. Judge TeSelle has determined that to ensure success of plans, the periodic payment of attorneys' fees is necessary. Nonetheless, the payment of attorneys' fees must begin with the first payment to creditors. *In re Lanigan,* 101 B.R. at 532.

This Guideline is not contrary to law, and does not rearrange priority claims. Petitioner argues that the payment schedule will affect when other claims are paid. This is not a violation of the priority of claims under § 507. Section 507 of the Bankruptcy Code must be read in conjunction with § 330 and § 503(b)(4) which provide that reasonable attorneys' fees are considered administrative expenses in Chapter 13 cases and may be recovered when the services are considered "necessary services." The bankruptcy court has the discretion to determine the amount of these expenses regardless of their priority.

Moreover, the debtor may propose a plan that does not force the Chapter 13 trustee to pay lower-priority claims over higher-priority claims by balancing payment of unsecured claims over the ten to 24–month period. Petitioner may argue that this delays his ability to receive early payment of his fees. However, this does not violate statutory law or federal rules. There is no statutory right to payment any earlier than when payments are made to creditors.

Finally, petitioner cites *Flygare v. Boulden,* 709 F.2d 1344 (10th Cir.1983) in support of his argument that Judge TeSelle's Guideline encouraging a 20% minimum payment to creditors so the attorney may receive his fee over ten months rather than 24 months violates Tenth Circuit law. Petitioner contends that *Flygare* prohibits a per se minimum payment to unsecured creditors as an element of good faith.

■ The Court's reading of *Flygare* does not support petitioner's argument. Rather, the appellate court in *Flygare* was concerned with the bankruptcy court's narrow view of confirming Chapter 13 plans for their lack of good faith. Pursuant to 11 U.S.C. § 1325(a)(3), if a plan is not proposed in good faith, it need not be confirmed. In determining whether Flygare's plan was in good faith, the Tenth Circuit Court of Appeals found that payments to unsecured creditors may be considered, but that this was merely one factor the bankruptcy court should weigh. *Id.* at 1347. The appellate court did not prohibit minimum payments to creditors, but merely required the bankruptcy court to examine several additional factors when determining whether a plan should be confirmed. Here, the Guideline does not require a per se minimum to obtain confirmation. Rather, the 20% minimum merely enables earlier payment of attorneys' fees. It does not ensure confirmation of the plan. As such, the Guideline does not violate Tenth Circuit law.

Although the Court has addressed the merits of petitioner's argument, its holding is limited to the determination of whether petitioner has satisfied his burden to establish a writ of mandamus. The Court finds petitioner has failed to establish a clear and indisputable right to a writ of mandamus.

### *Conclusion*

The Court finds it lacks jurisdiction to issue a writ of mandamus in this action. Assuming *arguendo* that jurisdiction exists, petitioner has failed to meet his burden of demonstrating a clear and indisputable right to the writ. Accordingly, the Petition for

Writ of Prohibition and Writ of Mandamus and Motion for Expedited Hearing are DE-NIED.